**ORIGINAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :     SEALED
                                        INDICTMENT
    -v.-                          :
                                        **13 CRIM 490**
AMINUR RAHMAN,                    :
    a/k/a "Bobby,"
LATRICE GRANT,                    :
ELBA GARCIA-LAMARCA,
FRED SPOELSTRA, and               :
MIRZA UJJAL,
                                  :
            Defendants.
                                  :
- - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUL 01 2013

COUNT ONE

(Conspiracy To Commit Bank Fraud And Wire Fraud)

The Grand Jury charges:

RELEVANT ENTITIES

1. At various times relevant to this Indictment, C&B Management and Development Corporation ("C&B") was a real estate management and development company registered to do business in the state of New Jersey, with offices located in Ridgewood, New Jersey. AMINUR RAHMAN, a/k/a "Bobby," the defendant, was the Vice President of C&B. At various times relevant to this Indictment, RAHMAN deposited the proceeds of fraudulently obtained home loans into C&B's bank account.

2. At various times relevant to this Indictment, B&R Real Estate Management and Development Incorporated ("B&R") was a real estate management and development company registered to do business



JUDGE DANIELS

in the State of New York, with offices in Jamaica, New York. AMINUR RAHMAN, a/k/a "Bobby," the defendant, controlled B&R. At various times relevant to this Indictment, RAHMAN used B&R to make payments on fraudulently obtained home loans.

3. At various times relevant to this Indictment, Genesis Management and Developer Company, LLC ("Genesis") was a mortgage brokerage firm registered to do business in the State of New York, with offices located in the Bronx, New York. LATRICE GRANT, the defendant, was President of Genesis and had signatory authority over its bank account. At various times relevant to this Indictment, GRANT applied for and/or processed fraudulent home loans through Genesis.

4. At various times relevant to this Indictment, Imagi Financial ("Imagi") was a company registered to do business in the State of New York, with its offices located in the Bronx, New York. LATRICE GRANT, the defendant, was President of Imagi. At various times relevant to the Indictment, GRANT used Imagi to purchase distressed properties on which fraudulent home loans were subsequently obtained.

5. At various times relevant to this Indictment, Brazi Realty Incorporated ("Brazi") was a mortgage brokerage firm registered to do business in the State of New York, with offices located in the Bronx, New York. ELBA GARCIA-LAMARCA, the defendant, was the

President of Brazi and had signatory authority over its bank account. At various times relevant to this Indictment, GARCIA-LAMARCA applied for and/or processed fraudulent home loans through Brazi and deposited proceeds from fraudulent home loans into Brazi's bank account.

      6.    At various times relevant to this Indictment, Custom Capital Corporation ("Custom Capital") was a mortgage brokerage firm registered to do business in the State of New York, with offices in Massapequa, New York. ELBA GARCIA-LAMARCA, the defendant, was a loan officer for Custom Capital. At various times relevant to this Indictment, GARCIA-LAMARCA applied for and/or processed fraudulent home loans through Custom Capital.

      7.    At various times relevant to this Indictment, Nicholas Realty was a real estate company registered to do business in the State of New Jersey with offices located in Clifton, New Jersey (the "Clifton Office"). At various times relevant to this Indictment, FRED SPOELSTRA, the defendant, was an employee of Nicholas Realty. SPOELSTRA used his position at Nicholas Realty to, among other things, locate and purchase distressed properties on which fraudulent home loans were obtained.

      8.    At various times relevant to this Indictment, Alstra Associates LLC ("Alstra") was a real estate investment company registered to do business in the State of New Jersey with its offices

located at the Clifton Office. At various times relevant to this Indictment, FRED SPOELSTRA, the defendant, used Alstra to purchase distressed properties on which fraudulent home loans were subsequently obtained.

9. At various times relevant to this Indictment, Ruji Management Corporation("Ruji") was a real estate management company registered to do business in the State of New York, with offices located in Briarwood, New York, at the residence of MIRZA UJJAL, the defendant. Ruji was registered in the name of UJJAL's wife and she had signatory authority over Ruji's bank account. At various times relevant to this Indictment, UJJAL used Ruji to acquire distressed properties and deposited proceeds of fraudulently obtained home loans into the Ruji bank accounts[s].

10. At various times relevant to this Indictment, GKC Trading Inc. ("GKC") was company registered to do business in the State of New York, with its offices located in Briarwood, New York. MIRZA UJJAL, the defendant, was President of GKC, and had signatory authority over its bank account. At various times relevant to this Indictment, UJJAL deposited the proceeds of fraudulently obtained home loans into GKC's bank account.

11. At all times relevant to this Indictment, HSBC Bank, NA USA ("HSBC"), Suntrust Banks Inc. ("Suntrust"), EverBank, UBS Bank USA ("UBS"), U.S. Bank, NA ("U.S. Bank"), MetLife Bank, NA

("MetLife") and JPMorgan Chase Bank, NA ("Chase") were financial institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation.

**THE DEFENDANTS**

12. At various times relevant to this Indictment, AMINUR RAHMAN, a/k/a "Bobby," the defendant, operated C&B and B&R, which he used to conduct fraudulent residential real estate transactions. RAHMAN supervised and coordinated the preparation of fraudulent home loan applications through, among other mortgage brokerage companies, Genesis and Brazi, oversaw the submission of fraudulent home loan applications to lenders, procured straw buyers, and collected proceeds of fraudulently obtained home loans, among other activities.

13. At various times relevant to this Indictment, LATRICE GRANT, the defendant, was the President of Genesis and of Imagi. GRANT served as a mortgage broker on fraudulent home loan applications, submitted fraudulent home loan applications to lenders, attended closings on fraudulent home loans, and collected proceeds of fraudulently obtained home loans, among other activities.

14. At various times relevant to this Indictment, ELBA GARCIA-LAMARCA, the defendant, was the President of Brazi and a loan officer with Custom Capital. GARCIA-LAMARCA served as a mortgage broker on fraudulent home loan applications, submitted fraudulent

5

home loan applications to lenders, attended closings on fraudulent home loans, and collected proceeds of fraudulently obtained home loans, among other activities.

15. At various times relevant to this Indictment, FRED SPOELSTRA, the defendant, controlled Alstra and was a real estate agent employed at Nicholas Realty. SPOELSTRA located distressed properties on which fraudulent mortgages were obtained and collected proceeds of fraudulently obtained home loans, among other activities.

16. At various times relevant to this Indictment, MIRZA UJJAL, the defendant, controlled Ruji and GKC. UJJAL located distressed properties on which fraudulent mortgages were obtained and collected proceeds of fraudulently obtained home loans, among other activities.

## THE SCHEME TO DEFRAUD

17. At all times relevant to this Indictment, and through the mortgage fraud scheme described herein, AMINUR RAHMAN, a/k/a "Bobby," LATRICE GRANT, ELBA GARCIA-LAMARCA, FRED SPOELSTRA and MIRZA UJJAL, the defendants, and others known and unknown, fraudulently brokered, obtained, and assisted others in obtaining home loans ("home loans" or "mortgages") from various lending institutions (the "lenders"). Through their scheme, the defendants obtained numerous mortgages under false and fraudulent pretenses in

order to enrich themselves and their co-conspirators. Many of these loans subsequently went into default and/or foreclosure. In many cases, after the fraudulently obtained loans entered default and/or foreclosure, RAHMAN, GRANT, GARCIA-LAMARCA, SPOELSTRA, and UJJAL, and their coconspirators repurchased the underlying property at a vast discount.

18. In furtherance of the scheme to defraud, from at least in or about 2005, up to and including at least in or about July 2013, the defendants, and others known and unknown, prepared and submitted applications and supporting documentation for home loans with false or misleading information, in order to induce lenders to make loans to persons and at terms that the lenders otherwise would not have funded.

19. As part of the scheme to defraud, the defendants and their co-conspirators identified residential properties located in the Tri-State area that were in default or foreclosure and could therefore be purchased at a low price (the "target properties").

20. As a further part of the scheme to defraud, at times the defendants induced homeowners to sell and/or transfer target properties to an entity controlled by the defendants, such as Genesis, Imagi, and Alstra, among others. Unbeknownst to the lenders who approved the loans on the target properties, the defendants then resold the target properties to third parties, or "straw buyers,"

at inflated prices, usually on the same day or within a short period of time. The inflated sale prices in the second transactions, or "flips," were often significantly higher than the short sale prices. At times, the defendants completed the flip transactions by using a portion of the home loan funds obtained from the lenders for the straw buyers to pay off the short sale prices of the target properties. The difference between the home loan amounts and the initial sale prices represented, in part, the defendants' profits from the scheme.

21. In furtherance of the scheme, the defendants typically recruited individuals with good credit scores to act as straw buyers for the target properties and to obtain home loans to fund the purchase of the target properties at inflated prices. On several occasions, the defendants arranged for the purchase of multiple properties in the names of the straw buyers. In some instances, the straw buyers were paid money, either as a fee or in order to pay for a few months of mortgage payments or other expenses. In essence, at times the defendants and their co-conspirators rented the identities of the straw buyers, using the personal identification information of the straw buyers - including, among other things, their names, Social Security numbers, and bank account numbers - to fraudulently obtain home loans in the straw buyers' names.

22. As a further part of the scheme to defraud, the defendants

induced lenders to provide home loans in the names of the straw buyers that the straw buyers otherwise could not afford by falsifying certain personal and financial information about the straw buyers that was material to the lenders in their lending decisions. For example, the defendants and their co-conspirators prepared and submitted to the lenders documents containing materially false and misleading information concerning the straw buyers' down payments, employment, income, and assets, among other things. In many cases, the defendants altered legitimate bank records or checks, and then submitted the altered financial records to the lenders as evidence of the straw buyers claimed financial circumstances.

23. As a further part of the scheme to defraud, in many instances, the defendants and their co-conspirators falsely claimed that the straw buyers intended to use the target properties as their primary residences when, in truth and in fact, the straw buyers never lived or intended to live in the target properties.

24. As a further part of the scheme to defraud, the defendants involved in each transaction distributed the proceeds from the fraudulently obtained home loans amongst themselves and their co-conspirators for their personal gain. The defendants also obtained significant fees in connection with the fraudulent transactions from their purported roles as real estate agents, mortgage brokers, and/or recruiters.

25. As a further part of the scheme to defraud, and in order to avoid detection by the lenders of the fraudulent nature of the home loans, in some instances the defendants would cause monthly payments to be made towards the straw buyers' loans for an initial period of time so that the loans would not go into default.

26. Properties located at the following locations, among others, were involved in the fraudulent scheme described above:

    a. 556 Market Street, Paterson, NJ 07503 ("556 Market Street");

    b. 112 North Main Street, Paterson, New Jersey ("112 North Main Street");

    c. 145-36 130th Avenue, Jamaica, New York 11436 ("145-36 130th Avenue");

    d. 117-14 204th Street, St. Albans, New York 11412 (117-14 204th Street");

    e. 50-12 103rd Street, Corona, New York ("50-12 103rd Street");

    f. 1220 Remsen Avenue, Brooklyn, New York, 11236 ("1220 Remsen Avenue"); and

    g. 1510 Hammersley Avenue, Bronx, New York, 10469 (1510 Hammersley Avenue");

### STATUTORY ALLEGATIONS

27. From at least in or about 2005, up to and including at least

in or about July 2013, in the Southern District of New York and elsewhere, AMINUR RAHMAN, a/k/a "Bobby," LATRICE GRANT, ELBA GARCIA-LAMARCA, FRED SPOELSTRA and MIRZA UJJAL, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Sections 1343 and 1344 of Title 18, United States Code.

28. It was a part and an object of the conspiracy that AMINUR RAHMAN, a/k/a "Bobby," LATRICE GRANT, ELBA GARCIA-LAMARCA, FRED SPOELSTRA and MIRZA UJJAL, the defendants, and others known and unknown, willfully and knowingly would and did execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

29. It was further a part and an object of the conspiracy that AMINUR RAHMAN, a/k/a "Bobby," LATRICE GRANT, ELBA GARCIA-LAMARCA, FRED SPOELSTRA and MIRZA UJJAL, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses,

representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### OVERT ACTS

30. In furtherance of the conspiracy and to effect the illegal objects thereof, AMINUR RAHMAN, a/k/a "Bobby," LATRICE GRANT, ELBA GARCIA-LAMARCA, FRED SPOELSTRA and MIRZA UJJAL, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

    a. In or about November 2007, RAHMAN deposited a check for approximately $30,000, representing the partial proceeds of the fraudulent loan on 1220 Remsen Avenue into the bank account of B&R.

    b. In or about November 2007, GARCIA-LAMARCA deposited a check for approximately $35,000, representing the partial proceeds of the fraudulent loan on 1220 Remsen Avenue, into her husband's bank account.

    c. In or about December 2007, GARCIA-LAMARCA deposited a check for approximately $16,000, representing the partial proceeds of the fraudulent loan on 1510 Hammersley Avenue, into her husband's bank account.

    d. In or about April 2008, GRANT deposited a check for

approximately $12,000, representing the partial proceed of the fraudulent loan on 117-14 204th Street, in the Genesis bank account.

  e.  On or about October 8, 2008, RAHMAN deposited a check for approximately $36,000, constituting the partial proceeds of the fraudulent loan on 556 Market Street, into the C&B bank account.

  f.  In or about January 2009, SPOELSTRA served as the sellers' agent for the fraudulent loans on 112 North Main Street.

  g.  On or about January 20, 2009, RAHMAN deposited a check for approximately $46,000, constituting the partial proceeds of the fraudulent loan on 145-36 130th Avenue, into the C&B bank account.

  h.  On or about January 20, 2009, UJJAL deposited three checks for approximately $56,000, constituting the partial proceeds of the fraudulent loan on 145-36 130th Avenue, into GKC's bank account.

  i.  On or about December 7, 2010, GRANT faxed a short sale package concerning 1510 Hammersley Avenue and containing false representations regarding potential buyers to Chase.

  j.  In or about October 2011, UJJAL prepared falsified bank statements in connection with the fraudulent loan application for 50-12 103rd Street.

  k.  On or about March 21, 2011, RAHMAN faxed a "Buyer's Agent Affidavit of Arm's Length Transaction" to Suntrust in connection with the short sale of 117-14 204th Street.

  l.  On or about March 8, 2012, SPOELSTRA spoke on the telephone

13

to a cooperating witness ("CW-1") who was in Manhattan, and discussed the division of proceeds from the fraudulent home loan on 556 Market Street.

(Title 18, United States Code, Section 1349.)

## FORFEITURE ALLEGATION AS TO COUNT ONE

31. As a result of committing the offense alleged in Count One of this Indictment, AMINUR RAHMAN, a/k/a "Bobby," LATRICE GRANT, ELBA GARCIA-LAMARCA, FRED SPOELSTRA and MIRZA UJJAL, the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982 and Title 28, United States Code, Section 2461, any property constituting or derived from proceeds obtained directly or indirectly as a result of the offense alleged in Count One of this Indictment.

## SUBSTITUTE ASSET PROVISION

32. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b) and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981, 982 and 1028;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____  
FOREPERSON

_____  
PREET BHARARA  
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

AMINUR RAHMAN, a/k/a "Bobby,"
LATRICE GRANT,
ELBA GARCIA-LAMARCA,
FRED SPOELESTRA
and MIRZA UJJAL

**Defendants.**

SUPERSEDING INDICTMENT

13  Cr.  ___  (__)

(18 U.S.C. §§ 1028A, 1343, 1344,
1349, 3147 and 2.)

PREET BHARARA
United States Attorney.

7/1/13 - Filed Sealed Indictment.
de      A/W's issued.
                Judge Francis
                U.S.M.J